UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MARTINEZ,<br><br>    Petitioner,<br><br>v.<br><br>CALIFORNIA COURT OF APPEAL,<br><br>    Respondent. | Case No. CV 17-806 JC<br><br>MEMORANDUM OPINION AND ORDER (1) DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND ACTION WITHOUT PREJUDICE; AND (2) DENYING RESPONDENT'S MOTION TO DISMISS PETITION AS MOOT |

**I.  SUMMARY**

On February 1, 2017, Jesus Martinez ("petitioner"), a pretrial detainee awaiting trial in Santa Barbara County Superior Court ("SBSC"), formally filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.[1] Petitioner claims that the dismissal and refiling of charges against him violates his constitutional right to a speedy trial.  He seeks the immediate dismissal of his pending criminal case.

---

[1] The Petition includes inserted pages which are not numbered sequentially.  The Court herein refers to the pages inserted by letter following the numbered page (*e.g.,* inserted pages after page 7 of the Petition are pages 7a, 7b, and 7c).

On March 10, 2017, respondent filed a motion to dismiss the Petition ("Motion to Dismiss"), arguing that the Petition should be dismissed because it does not raise a federal question and contains only unexhausted claims or, alternatively, that petitioner's claim fails on the merits because he has not shown any prejudice under Barker v. Wingo, 407 U.S. 514, 530-33 (1972) (courts reviewing a Sixth Amendment speedy trial claim generally look at four factors including prejudice to the defendant).[2]

On April 14, 2017, petitioner filed a "Motion to Proceed with Petitioners [sic] Writ of Habeas Corpus, etc.," with an attached memorandum of points and authorities, which the Court has construed as petitioner's opposition to the Motion to Dismiss ("Opposition"). Petitioner argues, *inter alia*, that he does not have to show prejudice because the Petition is a "pretrial appeal" concerning his speedy trial rights, whereas Barker concerned post-conviction proceedings, and explains how he believes he has been prejudiced. See Opposition at 2, 10-14.

On April 27, 2017, respondent filed a reply ("Reply") with attached exhibits ("Reply Ex."), addressing petitioner's factual allegations.

The parties have consented to proceed before the undersigned United States Magistrate Judge. As explained below, in light of the pendency of the state proceedings, this Court must abstain from considering petitioner's claim pursuant to Younger v. Harris, 401 U.S. 37 (1971),[3] and must dismiss this action without prejudice. Accordingly, respondent's Motion to Dismiss is denied as moot.

---

[2]Respondent concurrently lodged multiple documents in support of the Motion to Dismiss, including portions of the Reporter's Transcript ("RT"). See Exhibits lodged with Notice of Lodging (Docket No. 9). On April 27, 2017, respondent lodged additional documents. See Exhibits lodged with Notice of Supplemental Lodging (Docket No. 14). Respondent has not numbered the documents sequentially, so the Court herein refers to the documents by their exhibit numbers with "Lodgment Ex." and "Supp. Lodgment Ex."

[3]Federal courts may raise Younger abstention *sua sponte*. See Hoye v. City of Oakland, 653 F.3d 835, 843 n.5 (9th Cir. 2011).

## II. PETITIONER'S STATE COURT PROCEEDINGS[4]

On March 1, 2016, petitioner and a co-defendant were charged in SBSC Case No. 1493533, with multiple offenses stemming from an alleged rape that occurred on February 28, 2016. Petitioner waived time for arraignment. On March 3, 2016, petitioner pleaded not guilty and denied all special allegations in a complaint, and waived time for a preliminary hearing. On March 10, 2016, petitioner was arraigned on an amended complaint, and again pleaded not guilty and denied all special allegations. On March 17, 2016, petitioner filed a peremptory challenge to the assigned judge. The case was reassigned to Department 12, Hon. Michael Carrozzo, for all purposes. On April 14, 2016, petitioner appeared for a preliminary hearing and waived time. On May 16, 2016, petitioner appeared for a preliminary hearing and again waived time. On June 2, 2016, petitioner appeared for a preliminary hearing, but a subpoenaed witness failed to appear. Petitioner again waived time. On June 30, 2016, petitioner appeared for a preliminary hearing and again waived time. On August 8, 2016, petitioner appeared for a preliminary hearing setting and again waived time. On August 23, 2016, the court rescheduled the preliminary hearing to August 30, 2016. On August 30, 2016, the court held a preliminary hearing and found sufficient cause to hold petitioner to answer for the charged crimes.

On September 12, 2016, petitioner was arraigned on an information, pleaded not guilty, and denied all special allegations. Petitioner tendered no time waiver and his last day for trial was noted to be November 14, 2016. There were several pretrial hearings between September 12, 2016 and November 14, 2016. On November 8, 2016, the prosecution filed a motion to continue the jury trial pursuant to California Penal Code section 1050(g)(2) because the then-assigned

---

[4] Unless otherwise indicated, the history is drawn from minutes of SBSC Case Nos. 1499126 and 1493533, lodged as Supp. Lodgment Exs. 2 and 3, respectively.

prosecutor – Deputy District Attorney ("DDA") Von Deroian – was engaged in another trial; the prosecution asked the court to trail petitioner's trial until DDA Deroian became available. See Reply Ex. 1A (Motion with Declaration of DDA Von Deroian stating that she then was in trial which might not conclude until the week of November 28, 2016); see also Cal. Penal Code § 1050(g)(2) (allowing for continuances upon "good cause," including when the prosecutor for a sexual assault case has another trial in progress; continuances are limited to a maximum of 10 court days).

The trial court heard the motion to continue on November 14, 2016, when petitioner returned for trial. The trial court told the prosecution it could only get a continuance for 10 days under Section 1050(g), and that if DDA Deroian remained unavailable on the tenth day, the court would dismiss the case for failure to proceed on a speedy trial. The court indicated that another alternative was for the prosecution to then dismiss the case and to refile it, thereby starting a new 60-day clock for bringing petitioner to trial. See Supp. Lodgment Ex. 3 (minutes); see also Lodgment Ex. 1 at RT at 2-7 (hearing transcript). The prosecution elected the latter option and sought dismissal of the case without prejudice. The trial court granted such motion and dismissed the charges in Case No. 1493533. The prosecution then refiled the charges the same day in Case No. 1499126. Petitioner again pleaded not guilty to a complaint and denied the special allegations. See Supp. Lodgment Ex. 2 (minutes); Lodgment Ex. 1 at RT 8-12.

On November 22, 2016, a preliminary hearing in Case No. 1499126 was held in Department 10 before the Hon. James Iwasko, who found cause to hold petitioner to answer the charges. On December 19, 2016, petitioner returned to Department 12 before Judge Carrozzo, and again pleaded not guilty and denied all special allegations in an information. The last day for trial was noted to be February 17, 2017. Several readiness and settlement conferences occurred before petitioner appeared on February 6, 2017, for another readiness and settlement

conference. At this conference, petitioner waived time until April 30, 2017, to follow up on DNA results. See Supp. Lodgment Ex. 2 (minutes); Supp. Lodgment Ex. 1 at RT 2-3 (conference transcript). At the next conference on February 27, 2017, petitioner waived time until May 31, 2017. See Supp. Lodgment Ex. 2 (minutes); Lodgment Ex. 4 at RT 2 (conference transcript).

At the February 27, 2017 conference, the trial court noted that petitioner had filed a *pro se* motion to dismiss that had not been given to either counsel. (Lodgment Ex. 4 at RT 3; see also Lodgment Ex. 3 (copy of petitioner's motion to dismiss)). The prosecutor informed the trial court that petitioner had filed habeas petitions with the California Court of Appeal and California Supreme Court on December 15, 2016, and January 11, 2017, respectively, that the foregoing petitions had been denied, and that petitioner had filed the instant Petition with this Court. (Lodgment Ex. 4 at RT 4; see also Lodgment Ex. 2 (copy of habeas petition filed with the California Supreme Court which varies from the current Petition but asserts a federal speedy trial constitutional claim based upon the prosecution's dismissal and refiling of charges against petitioner)).[5] Petitioner conferred with his counsel and withdrew the motion, with the understanding that if petitioner's counsel felt it was an appropriate motion to file, she would do so on petitioner's behalf. (Lodgment Ex. 4 at RT 5-6).

///
///
///
///

---

[5]The dockets available in In re Jesus Efrain Martinez, Cal. Ct. App. Case No. B279632 and in Martinez on H.C., Cal. Case No. S239562, of which this Court takes judicial notice, indicate that the habeas petitions were denied on January 3, 2017, and February 15, 2017, respectively. See Dockets available online at appellatecases.courtinfo.ca.gov/search; Petition at 3-4 (noting same); see also Fed. R. Evid. 201; Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of court records).

5

## III. DISCUSSION[6]

### A. Abstention Is Appropriate

Except under narrow circumstances, federal courts abstain from interfering with pending state criminal proceedings. See Younger v. Harris, 401 U.S. 37 (1971); see also 28 U.S.C. § 2283. Federal courts abstain from addressing asserted violations of federal constitutional rights where: (1) state judicial proceedings are still pending; (2) the state proceedings implicate important state interests; and (3) the state proceedings offer an adequate opportunity to raise constitutional claims. Younger, 401 U.S. at 43-54; see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Dubinka v. Judges of Superior Ct., 23 F.3d 218, 223 (9th Cir. 1994). When all three of the Younger criteria are met, a court must abstain and dismiss the federal action without prejudice, absent extraordinary or special circumstances which pose a great and immediate threat of irreparable injury. See Younger, 401 U.S. at 45-56; see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 816 n.22 (1976) (Younger abstention not discretionary once conditions met); Kenneally v. Lungren, 967 F.2d 329, 331-32 (9th Cir. 1992) (Younger requires courts to abstain and dismiss federal actions that seek to enjoin state proceedings "unless one of the recognized exceptions to Younger is present"), cert. denied, 506 U.S. 1054 (1993); Beltran v. State of California, 871 F.2d 777, 782 (9th Cir. 1988) ("Younger abstention requires *dismissal* of the federal action.") (citations omitted, emphasis in original). In this case, all three of the Younger criteria are satisfied.

///
///
///

---

[6] The Court has read and considered all of petitioner's arguments. The Court discusses petitioner's principal arguments herein.

First, petitioner's state criminal proceedings are ongoing as apparent from: (1) the Petition (Petition at 6); and (2) petitioner's SBSC case information for Case No. 1499126 (available online at http://portal.sbcourts.org), of which the Court takes judicial notice.

Second, the state has an important interest in protection of the public and in the fair adjudication of petitioner's criminal charges. See Kelly v. Robinson, 479 U.S. 36, 49 (1986) ("This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.").

Third, although petitioner, proceeding *pro se*, has presented his pretrial speedy trial claim to the state courts via habeas petitions and has been denied, petitioner has had (and still has) an adequate opportunity in the state proceedings, including state appellate proceedings, to resolve any constitutional claims. Petitioner has appointed counsel who is capable of raising constitutional issues before, during, and after trial on direct appeal. See Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. at 432 (where vital state interests are involved, federal court should abstain unless state law clearly bars interposition of constitutional claims) (citations and quotations omitted); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 253 (9th Cir. 1992) (doctrine of abstention precludes party from obtaining relief in federal court simply because party disagrees with result reached by state courts); Lebbos v. Judges of the Superior Court, 883 F.2d 810, 813 (9th Cir. 1989) ("Abstention is appropriate based on 'interests of comity and federalism [that] counsel federal courts to abstain from jurisdiction when federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'") (citation omitted); see generally Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987) (federal court should assume state procedures will afford

adequate opportunity for consideration of constitutional claims in absence of unambiguous authority to contrary).

Petitioner has not shown extraordinary circumstances to warrant federal intervention. See Brown v. Ahern, 676 F.3d 899, 901 (9th Cir. 2012) (citing Carden v. Montana, 626 F.2d 82 (9th Cir.) (finding that petitioners had not demonstrated the type of special circumstances warranting federal intervention prior to trial for exhausted pretrial speedy trial claim), cert. denied, 449 U.S. 1014 (1980)). "[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in state courts." See Drury v. Cox, 457 F.2d 764, 764-65 (9th Cir. 1972) (per curiam).

A claimed speedy trial violation is not in itself an "extraordinary circumstance" necessitating pretrial habeas consideration. Brown, 676 F.3d at 901 (noting that "unlike the Double Jeopardy Clause, the Speedy Trial Clause, when raised as an affirmative defense, does not embody a right [that] is necessarily forfeited by delaying review until after trial") (quoting Carden, 626 F.2d at 84); compare Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-91 (1973) (finding that abstention principles did not prohibit federal habeas relief for pretrial detainee who claimed a speedy trial violation and sought only an order requiring the state court to initiate trial proceedings (rather than dismissal of the charges) and who had exhausted all of his state court remedies; Braden was not attempting to litigate his affirmative constitutional defense).[7] Unless a state defendant proves that one of the "extraordinary circumstances" established in Perez v. Ledesma, 401 U.S. 82, 85 (1971) (*i.e.*, cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a

---

[7]As discussed below, to the extent petitioner suggests in his Opposition that he is being subjected to double jeopardy, his contention lacks merit as jeopardy has not yet attached.

valid conviction, or in extraordinary circumstances where irreparable injury can be shown) applies, he must wait to bring a speedy trial claim in federal court until after trial and any conviction. Brown, 676 F.3d at 901 (citing Carden, 626 F.2d at 84); see also Coleman v. Ahlin, 542 Fed. Appx. 549, 551-52 (9th Cir. 2013) (applying Carden and Brown to preclude pretrial speedy trial claim seeking dismissal of state charges).

**B.  Petitioner Has Not Shown That His Prosecution Was Undertaken for Harassment or in Bad Faith**

Petitioner has not alleged or proved that the prosecution was undertaken for harassment purposes or in bad faith without hope of obtaining a valid conviction. Brown, 676 F.3d at 903. Petitioner suggests that the prosecution has used the power to dismiss and refile the charges to forum shop and to "evade" petitioner's speedy trial rights, questioning whether the prosecutor was not available on the set trial date as represented to the trial court. (Opposition at 4, 8-10).

As summarized above, there is no evidence that the prosecution dismissed the charges to forum shop. Petitioner's case was assigned to Judge Carrozzo for all purposes prior to the dismissal and remains assigned to Judge Carrozzo on the new charges. See Supp. Lodgment Exs. 2-3 (minutes).

There is also no evidence that the prosecutor improperly moved to continue the trial. The prosecution's motion to continue the trial and the supporting declaration of the then-assigned prosecutor, DDA Deroian, indicate that she would be engaged in another trial on the last day to bring petitioner's case to trial. (Reply, Ex. 1A). At the time, DDA Deroian, who worked in the prosecutor's Vulnerable Victim's Unit, reportedly had been the only prosecutor to interact with the alleged victim. (Reply, Ex 1A at 2). DDA Deroian subsequently was appointed to a judicial position "earlier this year" (*i.e.*, some time in 2017) and DDA Benjamin Ladinig (who represents respondent in this action) is now prosecuting the case. See Reply Ex. 1B (Declaration of DDA Benjamin Ladinig at

9

¶ 2). The prosecution's filing of a motion to continue the trial date under these circumstances and in accordance with California procedure does not suggest harassment or bad faith.

Petitioner also suggests that the prosecution dismissed and refiled the charges to delay in hopes that something beneficial to the People's case would occur, and that something beneficial did occur because petitioner's co-defendant accepted a plea offer in exchange for his testimony at petitioner's trial during the delay. (Opposition at 7; see also Motion to Dismiss at 5 (stating that on January 9, 2017, petitioner's co-defendant entered a guilty plea to forcible rape while acting in concert and provided a factual basis for the plea)). Petitioner speculates that if the prosecution had not refiled the charges, his co-defendant would not have "fold[ed] under pressure." (Opposition at 7). Certainly, if the charges had not been refiled petitioner's co-defendant would not have had any charges to plead to, but petitioner's speculation about his co-defendant's reasoning for accepting a plea offer after the charges had been refiled is not sufficient to show that the prosecution was acting in bad faith or to harass. According to DDA Ladinig's review of petitioner's case and discussions with DDA Deroian, petitioner's co-defendant was willing to enter a guilty plea *before* the dismissal of the charges (and before the last day to bring petitioner to trial). On June 29, 2016, petitioner and his co-defendant were offered sentences of seven years each, and petitioner's co-defendant countered with an offer of five years which was acceptable to the prosecution if petitioner agreed to the same sentence. See Reply Ex. 1B at ¶ 7.

The Court observes that DDA Ladinig states that at the time of the motion to continue there were several items of evidence that had pending DNA tests, and it was "unclear if the DNA results would implicate or exculpate [petitioner] of rape." (Reply Ex. 1B at ¶ 17). DDA Ladinig further states, "The Department of Justice Crime Lab was processing the evidence while undergoing a transition into new DNA protocol testing during late 2016. Pending DNA analysis, having DDA

Deroian engaged in another trial, and given the indicated ruling by [Judge Carrozzo], the case had to be dismissed and refiled." (Reply Ex. 1B at ¶¶ 21-22). At the hearing on the motion to continue petitioner's trial, DDA Ladinig mentioned that the court was forcing the prosecutor to make a decision to forego the ability to dismiss and refile the case should there be witness unavailability or evidence issues still pending at the end of the 10-day continuance requested under California Penal Code section 1050(g). (Lodgment Ex. 1 at RT 4). The trial court noted that if the prosecution had evidentiary issues it would be bringing a different motion – not a motion under Section 1050(g) due to prosecutor unavailability. (Lodgment Ex. 1 at RT 4).[8]

DDA Ladinig's statements in his declaration and during the hearing on the motion to continue suggest that the prosecution may have had an additional motive for seeking a continuance (*i.e.*, to obtain results of the DNA testing before trial). Respondent represents that the results of the DNA testing were reported on January 24, 2017 – after petitioner's co-defendant entered a guilty plea – and showed that Jane Doe's DNA was found on samples taken from petitioner's penis and from under petitioner's fingernails on the morning of his arrest, and that blood found in the bathroom at the crime scene matched petitioner's DNA profile. See Motion to Dismiss at 6.

The presence of another motive to continue the trial does not suggest that the prosecution was undertaken in bad faith without hopes of obtaining a valid conviction. Even without the DNA evidence, the victim's alleged statements to police presented at the preliminary hearing were sufficient to hold petitioner to answer the charges. Consistent with the victim's reports, petitioner's co-defendant

---

[8]Defense counsel argued that the motion under Section 1050(g) was inappropriate because DDA Ladinig had expressed that he was going to be handling the case going forward and handling the jury trial. See Lodgment Ex. 1 at RT 2-3. The trial court addressed defense counsel's concern by forcing the prosecution to either take a 10-day continuance for DDA Deroian to try the case, or dismiss and refile the charges. Lodgment Ex. 1 at 3-5.

reportedly stated when he entered his plea that he acted with petitioner to hold down and restrain Jane Doe "while she verbally and physically resisted, and during which [petitioner] penetrated Jane Doe's vagina with his penis and had intercourse with Jane Doe by force or fear or duress or coercion. . . ." See Motion to Dismiss at 5; see also Reply Ex. 1A at 2-4 (Statement of Facts summarizing the evidence from the preliminary hearing consisting of what Jane Doe described to the police about the rape, and evidence of Jane Doe's related injuries and petitioner's bloody nose).

### C. Petitioner Has Not Shown He Will Suffer Irreparable Injury If He Must Wait to Bring His Speedy Trial Claim

Petitioner has not alleged or proved that he will be irreparably injured by delaying his speedy trial claim until after a judgment of conviction in state court. Brown, 676 F.3d at 902.

First, petitioner claims an inability to adequately prepare for his case due to the delay. See Petition at 8b. Petitioner generally alleges that the delay has caused petitioner and his counsel to be unable to contact specific defense witnesses that petitioner's investigator had contacted previously. (Opposition at 10-11). Petitioner suggests that had he been released from jail on his own recognizance instead of held pending trial, petitioner could have contacted these witnesses himself – not to discuss the case but to refer them to defense counsel. (Opposition at 10-11). The foregoing is effectively a challenge to the state court's bail/custody determination – which is not before this Court – instead of a consequence of the asserted denial of a speedy trial. However, in any event, petitioner does not identify the witnesses in issue or provide any evidence to support a claim that his investigator or appointed counsel have not been able to contact witnesses who previously were available. Petitioner also does not allege that these witnesses would have testimony material to his defense. Petitioner's conclusory allegations are not sufficient to show the kind of extraordinary

circumstances that are likely to result in irreparable injury so as to warrant the Court's intervention.

Second, petitioner alleges that his status as a pretrial detainee hinders his defense because he has no law library access. (Opposition at 11). Again, as noted above, this is effectively a challenge to the state court's bail/custody determination, rather than a consequence of the alleged denial of a speedy trial. However, petitioner fails to demonstrate that his lack of library access has any material impact on his defense particularly since he has appointed trial counsel working on his behalf. Indeed, as it relates to his speedy trial claim, the trial court advised petitioner that his appointed counsel could review petitioner's issues and file a motion on petitioner's behalf, if appropriate, which the trial court would consider. See Lodgment Ex. 4 at 5-6. Petitioner's confinement and lack of law library access do not show that petitioner will be irreparably injured if he must wait to bring his speedy trial claim with this Court until after his state proceedings are concluded.

Third, petitioner alleges that the time he has spent in jail awaiting trial has had a detrimental impact on petitioner in that: (1) he lost a quality full-time job, (2) his family life is disrupted, (3) he withdrew from part-time classes at Santa Barbara City College, and (4) he has had anxiety, stress, and concern. (Petition at 8b-8c; Opposition at 13-14). However, these concerns are concerns that all pretrial detainees might express and do not establish irreparable injury for purposes of the abstention analysis. See Kugler v. Helfant, 421 U.S. 117, 123-25 (1975) (holding that irreparable injury does not include injury which is incidental to every prosecution brought lawfully and in good faith) (citing Younger, 401 U.S. at 46).

Fourth, petitioner argues that he need not show prejudice from the delay in bringing his claim pretrial, but asserts if he has to wait until after his conviction he will be required to show prejudice. (Opposition at 2-3, 5). As noted above, for

pre-conviction federal habeas relief, a petitioner may only expedite his trial – not obtain a dismissal of the charges. See Braden, 410 U.S. at 489-91. If habeas relief were available pretrial upon petitioner's request to have his charges dismissed for a speedy trial violation, his burden would be no different than it would be after trial – he would have to show some degree of prejudice. See United States v. Gregory, 322 F.3d 1157, 1163 (9th Cir. 2003) (where the prosecution does not act intentionally to cause delay and the delay "does not far exceed the minimum time required to trigger the full Barker inquiry," the court must consider the amount of delay "in relation to the particularized prejudice"); see also Barker v. Wingo, 407 U.S. at 530-36 (discussing factors). Petitioner's argument does not suggest he will suffer irreparable injury if the Court does not intervene now.

Fifth, petitioner suggests in the Opposition that the dismissal and refiling of charges constitutes placing him twice in jeopardy. (Opposition at 4). This assertion is specious. The Fifth Amendment's protection against double jeopardy does not attach until the defendant is put to trial before the trier of fact. See Serfass v. United States, 420 U.S. 377, 388 (1975) (jeopardy attaches when a jury is empaneled and sworn). Double jeopardy did not attach simply because charges were filed and dismissed prior to the start of trial.

Because the relief petitioner seeks would interfere with the state court's proceedings in contravention of the abstention doctrine set forth in Younger, and because it appears that no exception to Younger exists in this case, abstention applies and the Petition must be dismissed without prejudice.

**IV.　ORDER**

IT IS THEREFORE ORDERED that the Petition is dismissed without prejudice, that Judgment be entered accordingly, and that respondent's Motion to Dismiss is denied as moot.

DATED: May 22, 2017　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　Honorable Jacqueline Chooljian
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE